UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEMINI INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:22-cv-01114-TMC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Before the Court are Defendant Gemini Insurance Company ("Gemini") and Plaintiff Travelers Property Casualty Company of America's ("Travelers") cross-motions for summary judgment (Dkt. 25, 27). Having considered the parties' briefing, oral argument, and relevant law, the Court GRANTS IN PART and DENIES IN PART Gemini's motion and DENIES Travelers's motion.

## I. BACKGROUND

This action is about insurance coverage the parties provided to Precision Industrial Contractors ("Precision"), an industrial machinery maintenance provider, and legal costs the parties incurred defending Precision when machinery it serviced allegedly caused contamination and a 2016 recall of pumpkin pies manufactured by Maplehurst Bakeries ("Maplehurst"). Dkt. 1-

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

1 at 2–3. Precision had a commercial general liability insurance policy with Travelers providing coverage from June 1, 2015, to June 1, 2016, and a commercial general liability policy with Gemini from June 1, 2016 to June 1, 2017. *Id*. at 2. Precision's policy with Travelers covered, in relevant part, property damage taking place during its policy period. *See* Dkt. 28-1 at 23, 37.

In May 2016, Precision serviced a "spiral food freezer" at Maplehurst's Kent, Washington facility over a five-day period, acting as a subcontractor for another vendor. Dkt. 1-1 at 2–3. On or around September 21, 2016, Maplehurst's major customer, Sam's Club, reported that one of its pumpkin pies was contaminated with plastic scrapings. *Id*. at 3. Consultants determined that conveyor belt rods in the spiral food freezer had been installed backwards, causing them to scrape against plastic parts and release plastic into some of Maplehurst's pies. *Id*. Maplehurst retained Marsh Consulting ("Marsh") to analyze the reported contamination and on January 10, 2019, Marsh completed a forensic accounting report (the "Marsh Report"). *Id*. The Marsh Report determined that the contaminated pies were produced between July 27, 2016, and September 30, 2016. *Id*. Maplehurst claimed damages exceeding $9.9 million for approximately 1.7 million recalled pies. *Id*. at 4.

On August 2, 2019, Maplehurst sued Precision in Washington and Illinois state court (the "underlying litigation"), and Precision tendered a request to Gemini for defense and indemnity. *Id.* Maplehurst alleged that the vendors, including Precision, that serviced its freezer in May 2016 improperly installed components that caused the scraping and release of plastic onto pies processed in the freezer. Dkt. 26-1 at 3–4. Maplehurst did not specify the production dates of the contaminated pies in its complaint. *See id*.

On February 24, 2021, coverage counsel for Gemini in the underlying litigation asked Precision to also tender a request for defense and indemnity to Travelers. *Id*. at 31. On March 2, 2021, Precision's outside counsel, Preg O'Donnell & Gillett, PLLC, confirmed Precision's

approval of the tender to Travelers, *id*. at 30, and Gemini tendered to Travelers on behalf of Precision the same day, *id*. at 33–38. On March 26, 2021, Travelers agreed to defend Precision subject to a full reservation of rights. Dkt. 1-1 at 4. On March 31, 2021, Gemini requested Travelers split the cost of defending Precision. *Id*.

On September 27, 2021, Travelers received a copy of the Marsh Report for the first time. Dkt. 27 at 6. Travelers claims that Gemini had the Marsh Report when it tendered the underlying litigation and should have known the report stated that the pie contamination occurred after Travelers's coverage period ended. Travelers asserts that this invalidates Gemini's tender to Travelers on behalf of Precision. *Id*. Accordingly, on October 29, 2021, Travelers filed for declaratory judgment against Precision to determine its defense or indemnity obligations in the underlying litigation. Dkt. 1-1 at 5; Dkt. 5 at 7.

On November 26, 2021, different outside counsel for Precision, Miller Nash LLP, contacted Gemini stating that Precision's consent for tendering to Travelers "was given without the assistance of counsel" and that Gemini should "take responsibility for any potential negative repercussions" of the tender to Travelers because it could jeopardize coverage under a separate umbrella policy with First Mercury Insurance Company. Dkt. 30-5 at 2–4. Travelers subsequently settled its declaratory judgment lawsuit against Precision for an assignment of rights from Precision for any claims against Gemini. *See* Dkt. 1-1 at 5; Dkt. 25 at 2–3. The settlement occurred before any court decision about Travelers's coverage obligations.

In January 2022, the underlying litigation settled through mediation with Gemini paying its policy limit and Travelers paying nothing. Dkt. 25 at 2, 7. Travelers states it paid $85,409.87 in costs and fees in the underlying litigation to defend Precision (Dkt. 27 at 6), while Gemini states it incurred costs exceeding $204,000 defending Precision (Dkt. 5 at 7). On July 6, 2022, Travelers filed a complaint against Gemini in King County Superior Court seeking an award of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

all of Travelers's costs and legal fees and damages, contribution, subrogation, and indemnity against Gemini associated with the underlying litigation. *See* Dkt. 1-1 at 9; Dkt. 25 at 2.

On August 10, 2022, Gemini removed Travelers's lawsuit to this Court (Dkt. 1) and moved for summary judgment on December 4, 2023 (Dkt. 25). Travelers cross-moved for summary judgment on December 22. Dkt. 27. Gemini replied on December 29 (Dkt. 31), and Travelers replied on January 11, 2024 (Dkt. 33). Gemini argues that Travelers's duty to defend Precision in the underlying litigation was validly triggered by tender and Travelers therefore has no claim to any reimbursement of defense costs. Dkt. 25 at 9–11. Gemini also seeks summary judgment on its counterclaims for equitable contribution and unjust enrichment, arguing that Travelers should pay an equal share of the total defense costs incurred. Dkt. 25 at 12–13; Dkt. 5 at 7–8. Travelers responds that not only was the tender to it in the underlying litigation invalid, but the claims made against Precision were not covered under its policy period with Travelers and it never had a duty to defend. Dkt. 27 at 12–13.

## II.   DISCUSSION

### A.   Applicable law.

#### 1.   *Jurisdiction.*

The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the opposing parties are citizens of different states. Travelers claims it paid more than $75,000 in defense costs it did not owe, *see* Dkt. 27 at 6, and Travelers is a citizen of Connecticut while Gemini is a citizen of Delaware and Arizona. Dkt. 2 at 2. Because the Court is sitting in diversity, the substantive claims are governed by state law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties agree that Washington state law applies to this dispute. *See* Dkt. 25 at 9; Dkt. 27 at 11.

   *2.   Summary judgment standard.*

On cross-motions for summary judgment, each motion "must be considered on its own merits," and it is "well-settled in this circuit and others that the filing of cross-motions for summary judgment, both parties asserting that there are no uncontested issues of material fact, does not vitiate the court's responsibility to determine whether disputed issues of material fact are present." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir.1978)).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And a fact dispute is "material" "only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim for which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

The evidence relied upon by the nonmoving party must be able to be "presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). "'The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). Even circumstantial evidence can defeat summary judgment if inferences drawn in the non-moving party's favor are reasonable. *McLaughlin v. Liu*, 849 F.2d 1205, 1208–09 (9th Cir. 1988).

       3.     *An insurer's duty to defend is broader than its duty to indemnify.*

An insurer's duties to defend and indemnify "are distinct obligations, the former being broader." *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wn.2d 654, 690, 15 P.3d 115 (2000) (citation omitted), *as amended* (Jan. 16, 2001) (citing *Weyerhaeuser Co. v. Aetna Cas. & Sur. Co.*, 123 Wn.2d 891, 901, 874 P.2d 142 (1994)). "The duty to defend 'arises at the time an action is first brought, and is based on *the potential for liability*.'" *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007) (quoting *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 758, 58 P.3d 276 (2002)). This potential for liability is based on a liberal construction of the complaint against the insured and an insurer "is not relieved of its duty to defend unless the claim . . . is 'clearly not covered by the policy.'" *Id*. The insurer's duty to indemnify "exists only if the insurance policy actually covers the insured's liability," unlike the duty to defend, which "arises when the policy *could* conceivably cover allegations in a complaint." *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171, 181, 400 P.3d 1234 (2017), *as modified* (Aug. 16, 2017).

Washington law applies the "eight corners rule" when analyzing an insurer's duty to defend a policyholder. The Court examines the "four corners" of the complaint against the policyholder and the "four corners" of the insurance policy to determine whether there is an issue of fact or law that gives rise to the insurer's duty to defend. If there is "any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Id*. "If a complaint is ambiguous, a court will construe it liberally in favor of triggering the insurer's duty to defend." *Woo*, 161 Wn.2d at 52 (internal quotations omitted).

When an insurer *does* defend its policyholder, the duty ends if a court determines that there was no coverage. *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 885, 297 P.3d 688 (2013). In such situations, the insurer is not retroactively absolved from paying defense costs. *Id*.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

"After obtaining a declaration of noncoverage, an insurer will not be obligated to pay *from that point forward*." *Id*. (internal quotations omitted). The Washington Supreme Court explained in *Immunex* that an insurer is not allowed to recover defense expenditures incurred before a court determination of noncoverage, because allowing this would render any offer to defend a policyholder simply an exercise in protecting the *insurer* from claims of breach "while placing the full risk of a determination of noncoverage on its insured." *Id*. "To allow the insurer to force the insured into choosing between seeking a defense . . . and run the potential risk of having to pay for this defense if it is subsequently determined that no duty to defend existed, or giving up all meritorious claims that a duty to defend exists," would destroy "the concept of liability and litigation insurance." *Id*. at 887 (quoting *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods*, 215 Ill.2d 146, 162 (2005)).

          4.     *Insureds can selectively tender requests for defense to their insurers.*

Washington state's "selective tender rule" means insureds can choose whether to request a defense and from which insurer if there are multiple insurance policies implicated by a claim. *See Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 420–21, 191 P.3d 866 (2008). Because insurers "cannot be expected to anticipate when or if an insured will make a claim for coverage[,] the insured must affirmatively inform the insurer" that it seeks their defense. *Id*. (quoting *Griffin v. Allstate Ins. Co.*, 108 Wash. App. 133, 140, 29 P.3d 777 (2001)).

The policyholder "has the prerogative not to tender to a particular insurer" and may decline tender for multiple reasons including "to preserve its policy limits for other claims, or simply to safeguard its relationship with its insurer." *Id.* The Ninth Circuit has recognized that either the insured "or someone on the insured's behalf" can tender a request for defense. *XL Specialty Ins. Co. v. Progressive Cas. Ins. Co.*, 411 F. App'x 78, 81 (9th Cir. 2011) (citing *Cas.*

*Indem. Exch. Ins. Co. v. Liberty Nat'l Fire Ins. Co.*, 902 F. Supp. 1235, 1238 (D. Mont. 1995)); *Mut. of Enumclaw*, 164 Wn.2d at 420–21.

        5.     *Insurers can seek equitable contribution for a common liability.*

The "selective tender rule" means that "if the insured has not tendered a claim to an insurer prior to settlement or the end of trial, other insurers cannot recover in equitable contribution against that insurer." *Mut. of Enumclaw*, 164 Wn.2d at 420–21. "Equity provides no right for an insurer to seek contribution from another insurer who has no obligation to the insured." *Id*. at 419–20. There is common liability, however, under the doctrine of "equitable contribution" for "a loss that both insurers are *concurrently obligated* to cover." *Id.* at 423.

There are claims to equitable contribution when the "nonparticipating coinsurer had a legal obligation to provide a defense or indemnity coverage for the claim or action prior to the date of settlement." *Id*. (quoting *Safeco Ins. Co. of Am. v. Superior Ct.*, 140 Cal. App. 4th 874, 879 (2006) (internal punctuation omitted)). It follows that insurers in receipt of tender should equitably contribute to the defense of a mutual insured because the defense obligation is "triggered" upon tender. *XL Specialty*, 411 F. App'x at 81.

The Ninth Circuit has found it equitable to equally apportion defense costs between insurers and has stated that trial courts have discretion to allocate costs among insurers "based on the facts and circumstances of the particular case." *Am. States Ins. Co. v. Ins. Co. of Pa.*, 800 F. App'x 452, 454 (9th Cir. 2020) (discussing how a "50-50 allocation of defense costs . . . was well within the trial court's equitable discretion"). Washington courts have similarly found it equitable for insurers "to share defense costs equally until judgment or settlement" when "both had the duty to defend." *Perez Trucking, Inc. v. Ryder Truck Rental, Inc.*, 76 Wash. App. 223, 232, 886 P.2d 196 (1994).

**B.      Gemini and Travelers's cross-motions for summary judgment.**

        *1.      Precision's tender for defense to Travelers was valid.*

The Washington selective tender rule allows insureds to choose which of their insurers to tender for defense. *See Mut. of Enumclaw*, 164 Wn.2d at 420–21. Tender need not take a particular form, but an insured "must affirmatively inform the insurer" of a request for defense. *Id*. Here, the undisputed facts show Precision tendered defense to both Travelers and Gemini.

While emails simply inquiring whether there is coverage are not enough to be an "affirmative request for assistance," actions sufficient to involve an insurer in defending legal proceedings constitute valid tender. *See XL Specialty*, 411 F. App'x at 81. In this case, although Gemini tendered *on behalf of* Precision, Travelers treated the tender as valid, *see* Dkt. 28-3 at 2, 11–12, and agreed to defend Precision in March 2021, Dkt. 1-1 at 4. This is no different from Precision directly communicating a tender to Travelers because either the insured "or someone on the insured's behalf" can tender for defense. *Id*.

The tender to Travelers was more than an "informal email" and was clearly an "affirmative request for assistance." *See XL Specialty*, 411 F. App'x at 81; *Mut. of Enumclaw*, 164 Wn.2d at 420–21. Precision approved of the tender and sent this approval to Gemini via outside counsel at Preg O'Donnell & Gillett, PLLC. Dkt. 26-1 at 30–31. Gemini then tendered on Precision's behalf with a letter to Travelers outlining the underlying litigation and specifying that "Precision Industrial Corporation, Inc. ("PIC") [. . .] requests that Travelers undertake to defend PIC with respect to each of" the underlying lawsuits. Dkt. 26-1 at 33. There is no question that the actions taken by Precision and Gemini to tender to Travelers for defense in the underlying litigation exceed the "informal email" standard. *XL Specialty*, 411 F. App'x at 81.

Travelers does not provide any evidence of Precision refusing permission to tender or attempting to rescind its tender. Travelers only demonstrates that Precision later learned of

unintended consequences from the tender and communicated to Gemini that permission to tender "was given without the assistance of counsel." Dkt. 30-5 at 2–4. Travelers provides no authority, however, that this invalidates the tender. Finally, Travelers offers that Precision felt compelled to tender at Gemini's request due to a cooperation clause in its insurance policy with Gemini. *See* Dkt. 27 at 6. Again, Travelers does not cite, nor can the Court find, any authority suggesting that this post hoc explanation invalidates a clear tender; the selective tender doctrine under Washington law put the choice to tender in Precision's hands, *see Mut. of Enumclaw*, 164 Wn.2d at 420–21, and the undisputed facts show that Precision authorized the tender to Travelers. Accordingly, the Court holds that the tender to Travelers was valid under Washington law.

        2.        *Travelers had a duty to defend and cannot retroactively recover costs.*

An insurer's duty to defend is "triggered" when it receives tender from its insured. *XL Specialty*, 411 F. App'x at 81. Here, Precision tendered to Travelers on March 2, 2021, *see* Dkt. 26-1 at 33, and Travelers accepted tender on March 6, 2021, *see id*. at 43. Washington law examines the "eight corners" of the complaint and relevant insurance policy to determine whether an insurer has a duty to defend. *See Xia*, 188 Wn.2d at 181. Where "any reasonable interpretation of the facts or the law . . . could result in coverage, the insurer must defend." *Id*. And even when "a complaint is ambiguous, a court will construe it liberally in favor of 'triggering the insurer's duty to defend.'" *Woo*, 161 Wn.2d at 52.

In this case, Maplehurst's underlying litigation against Precision asserted that plastic contamination required a recall of pies and specifically referenced Precision's May 2016 servicing of Maplehurst's spiral food freezer as causing the contamination and damaging Maplehurst property. *See* Dkt. 26-1 at 3–4, 6–7, 11–12, 16–18. The underlying litigation specifically alleged that Precision was negligent in "failing to properly measure, cut and install the connection rods and conveyer belt" that led to contamination and did not specify any

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

production dates for those pies—only that the contamination was reported in September 2016. *See id*. at 6–7, 17–18. The litigation also alleged that "Maplehurst also incurred costs for . . . repairs to the spiral freezer." *Id.* at 4. Travelers's insurance policy for Precision covered property damage "during the policy period" of June 1, 2015, to June 1, 2016. *See* Dkt. 28-1 at 23–27. Travelers argues that the Marsh Report findings (that contamination of the pies took place beginning in July 2016) mean all the property damage took place after Travelers's policy period—but Maplehurst's lawsuit alleges a course of action that began during the policy period and includes damage not only to the pies but to the equipment serviced in May 2016. Dkt. 27 at 3–4.

Accordingly, it is reasonable to interpret Maplehurst's complaint as alleging property damage that could have occurred before the end of Travelers's policy period, *see id.* at 6–7, 17–18, which would have been covered by Travelers's policy, *see* Dkt. 28-1 at 23. Because a reasonable interpretation of the complaint results in coverage, Travelers had a duty to defend in the underlying litigation. *See Xia*, 188 Wn.2d at 181.

An insurer's duty to defend its policyholder ends upon a court's determination that there was no coverage. *See Immunex*, 176 Wn.2d at 885 ("After obtaining a declaration of noncoverage, an insurer 'will not be obligated to pay' *from that point forward*."). Travelers defended Precision in the underlying litigation beginning in March 2021 through to the settlement of the litigation in January 2022. Dkt. 25 at 2, 7; Dkt. 26-1 at 43. But no court ever determined whether there was coverage under the Travelers policy for the claims in the underlying litigation. *See Immunex*, 176 Wn.2d at 885.

Accordingly, because Travelers had a duty to defend under the eight corners of its policy and the underlying complaint, *see Xia*, 188 Wn.2d at 181, and no court ever determined that the

claims in the underlying litigation were *not* covered, there is no theory under which Travelers could disclaim responsibility for the costs it incurred in providing that defense.

Travelers's claim that the Marsh Report negated its duty to defend is irrelevant because (1) the assertion that property damage took place outside the policy period was not determined by any court, *Immunex*, 176 Wn.2d at 885, and (2) its duty to defend is distinct from the duty to indemnify, *Weyerhaeuser*, 142 Wn.2d at 690. Travelers conflates the duties to defend and indemnify when it argues that because its policy should not have covered Precision in the underlying litigation based on the Marsh Report, it therefore had no duty to defend. Dkt. 27 at 12–13. The duty to defend is broader than the duty to indemnify and is "liberally" triggered. *Woo*, 161 Wn.2d at 52.

        3.    *Gemini has a claim for equitable contribution from Travelers.*

Insurers that have received defense tender for a mutual insured should equitably contribute to the insured's defense if they are "concurrently obligated to cover" the defense or potential loss. *See XL Specialty*, 411 F. App'x at 81; *Mut. of Enumclaw*, 164 Wn.2d at 418–22. Because both Travelers and Gemini received tenders to defend Precision in the underlying litigation, they should equitably contribute to the cost of that defense. *Id*. Washington courts have found that it is equitable for insurers to "share defense costs equally" when "both had the duty to defend." *Perez Trucking*, 76 Wn. App. at 232. And the Ninth Circuit has found that defense costs between insurers can be equitably shared "based on the facts and circumstances of the particular case." *Am. States. Ins. Co.*, 800 App'x at 454.

Travelers does not have a right to reimbursement for its defense costs because it was "concurrently" obligated, along with Gemini, to defend Precision. *See supra* Section II.B.2; *Mut. of Enumclaw*, 164 Wn.2d at 418–22. Instead, the question remains whether Gemini has a claim for additional contribution from Travelers—on top of what has already been paid—for

Precision's defense in the underlying litigation. *See generally* Dkt. 25. Accordingly, the parties should brief the Court on what it would mean for them to "share defense costs equally," *Perez Trucking*, 76 Wn. App. at 232, or in some other equitable allocation "based on the facts and circumstances" of this case, *Am. States. Ins. Co.*, 800 App'x at 454. Additionally, Gemini's claim that Travelers has been unjustly enriched, Dkt. 25 at 15, is moot because an equitable reallocation of defense costs would make Gemini's recovery duplicative.

        4.        *Travelers does not support its claims for subrogation or unclean hands.*

"Subrogation is the principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Mut. of Enumclaw*, 164 Wn.2d at 423 (quotations and punctuation omitted). And "an insurer who receives full contractual assignment of an insured's rights may bring a conventional subrogation claim to enforce those rights." *Id*. at 424. In this case, Travelers claims it is entitled to "equitable subrogation" in the form of reimbursement for costs it incurred defending Precision. Dkt. 27 at 17. The Court disagrees. Travelers does not show how Gemini (which paid its full policy limit toward settlement of the underlying litigation, Dkt. 25 at 2) breached any agreement with or otherwise damaged Precision, and therefore draws no relation to rights or remedies Travelers would assert against Gemini as Precision's subrogee. *See id*. Travelers claims for subrogation are denied.

Travelers also asserts that Gemini has unclean hands and is barred from any recovery. *Id*. at 15. Travelers claims that "Gemini was aware of facts establishing there was no coverage available under the Travelers' [sic] policy as early as 2018" and "Gemini withheld that information to induce Travelers to contribute to a defense of claims." *Id*. Travelers's argument again is predicated on the Marsh Report, stating that contamination of Maplehurst's pies took place during Gemini's policy period rather than Traveler's. *See* Dkt. 27 at 6. Here, the Court also

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

disagrees. Maplehurst's claims against Precision in the underlying litigation could have been reasonably interpreted to involve coverage by both Gemini *and* Travelers regardless of the dates specified by the Marsh Report. *See supra* at Section II.B.2.

The underlying litigation asserted a broad period for damages, *see* Dkt. 26-1 at 2–20, and no court ever determined when those damages occurred for coverage purposes, *see Immunex*, 176 Wn.2d at 885. The onus to challenge its duty to defend lay with Travelers, and to do so based on the eight corners of the complaint and its policy. *See Xia*, 188 Wn.2d at 181; *Woo*, 161 Wn.2d at 52. It was not Precision or Gemini's obligation to avoid tendering to Travelers simply because of statements made by the Marsh Report, especially when Maplehurst's claims were much broader in substance and could reasonably be interpreted to trigger both insurers' duties to defend—negating any claim of unclean hands. *See Mut. of Enumclaw*, 164 Wn.2d at 420–21.

### III.     CONCLUSION

For the reasons explained above, the Court GRANTS IN PART and DENIES IN PART Gemini's motion for summary judgment (Dkt. 25) and DENIES Traveler's cross-motion for summary judgment (Dkt. 27).

Gemini's claim that Travelers was unjustly enriched is DENIED as moot, and its claim that Travelers has no right to subrogation is GRANTED.

Gemini's claim for equitable contribution from Travelers of no less than 50% of defense costs, Dkt. 25 at 13, is GRANTED IN PART and the parties are directed to submit either a stipulated motion or (in the alternative) briefing for an equitable allocation of the parties' costs in the underlying litigation. If the parties submit additional briefing, Gemini shall file the first brief and note it as a third-Friday motion under Local Civil Rule 7(d)(3). The brief shall be filed no later than March 7, 2024.

Dated this 9th day of February, 2024.

                                              Tiffany M. Cartwright
                                              United States District Judge